THE STATE, SAMUEL P. TOWNSEND, prosecutor, *vs.* THE MAYOR AND COMMON COUNCIL OF JERSEY CITY.

1. The common council of Jersey City have authority to pass an ordinance for filling up Grand street, although said street is covered by a plank road, laid by virtue of a special act of the legislature.

2. A person assessed for a part of the expenses of filling up a street, held to have waived any objection to the ordinance in consequence of an irregularity in the mode of giving notice of the time and place when objections might be made, and also his right to appear before the board of assessors.

3. The assessment must show on its face that the commissioners pursued strictly the authority vested in them by the statute.

---

*Certiorari* to bring up an assessment for the regulation of Grand street, from Jersey street to Mill creek, in Jersey City, upon the property of Samuel P. Townsend, with all the proceedings touching and concerning the same.

Argued before the CHIEF JUSTICE, and Justices ELMER, POTTS, and VREDENBURGH.

*I. W. Scudder*, for the prosecutor, insisted that the ordinance and assessment were illegal, and should be set aside.

*McClelland* and *Bradley*, for the city, insisted that the validity of the ordinance was not properly before the court on this writ, and that if it was, it was duly passed, and that the assessment was substantially in conformity with the charter, as amended, and ought to be confirmed.

The opinion of the court was delivered by

ELMER, J. Two classes of objections are relied upon by the counsel of prosecutor in this case—one applying to the ordinance of the common council, authorizing the filling up of Grand street, in Jersey City, and the other to the assessment made by the commissioners, and confirmed by the council. The *certiorari* requires the mayor and common council to certify and send to this court a certain assessment upon the property of the prosecutor, for the regulation of Grand street, with all the proceedings touching and concerning the same. A preliminary question was raised by the counsel of the city, whether, upon this writ, the validity of the original ordinance is properly before us. I am, however, of opinion that it was not necessary to bring up the ordinance by a special writ, but that its validity is directly involved, and must necessarily be decided in the case, as it is now before us. In the case of *The State* v. *Newark*, 1 *Dutcher* 399, this court held that assessments of this description are of a judicial character, and that the court, in deciding upon their validity, may examine whether the previous proceedings upon which they rest for support are, or are not void. All the proceedings relating to the ordinance are before us, and the *certiorari* is sufficiently broad to include them.

VOL. II.                    2 E

State v. Jersey City.

The first objection urged against the validity of the ordinance was, that Grand street was, in part, at least, covered by a plank road, laid by virtue of a special act of the legislature, approved March 6th, 1850, (*Pamph. L.* 255,) before the charter of the city, which was granted in 1851, and that this street was not subject to the action of the common council. But the plank road act simply authorizes an incorporated company to lay out, construct, and maintain a plank road along Grand street, without vesting the road in the company, or requiring compensation to be made to any owner. The charter empowers the common council to make and lay out all streets upon all and every part of the premises included within the city boundaries, and to establish such as had been already laid out, and to regulate and govern the leveling, pitching, and constructing of the streets, and provides how the expenses of improving, grading, altering, and filling up, paving and guttering the said streets, shall be assessed upon and paid by the lands and real estate benefited thereby. It does not appear that the filling up in question did any injury to the company, or was objected to by them. As between the city and the company, probably, the city had no power to authorize or require any improvement or alteration of the street that would materially interfere with the use of it for the purposes of the plank road. But this plank road was, in fact, laid upon one of the recognized streets of the city, which was, by the express terms of the charter, subject to the regulation and control of the common council. Without the exercise of this power over this street, the proper grades could not be preserved, nor could the owners of the adjacent property improve it as the charter contemplated. The filling up was for their benefit, and they could be rightfully assessed to defray the needful expense only in case they were benefited.

Another objection to the ordinance was, that the notice given of the time and place of hearing objections to the proposed improvement, required such objections to be

presented in writing. In the case of *The State* v. *Jersey City*, 1 *Dutcher* 311, a similar notice was considered as invalidating the ordinance. It is to be remarked, however, that in that case the council never in fact appointed a time for hearing persons interested, as the charter requires, and the ordinance passed was not introduced at a previous stated meeting; so that it may be doubted whether the mere insertion of the words in the notice, that objections should be made in writing in a case where no objections of any kind were offered, would have been held to render the ordinance absolutely void. Be that as it may, it appears in this case, that after the assessment was made, the prosecutors presented several written remonstrances against confirming it, in none of which is the ordinance itself objected to. Notice of a proposed ordinance authorizing improvements is required, to give the parties interested, upon whom the expense must fall, an opportunity of being heard, and stating their objections, if they have any. If any such party had appeared, and desired to be heard verbally, or had made written objections, and therein expressly reserved all legal objections, as was done in the case referred to, he might with propriety afterwards insist that so far from consenting to the improvement, he had formally dissented. But here the prosecutor offered no objections to the contemplated improvement in any way, but subsequently made objections to the amount assessed against him, for reasons which implied his assent to the ordinance itself. Under these circumstances, I think he must be held to have waived any objection he might have taken to the form of the notice, and to have consented to the passing of the ordinance, so far as his interests were concerned.

The objection, that the third section of the ordinance authorizes the street committee to appoint a superintendent of the work, and is therefore contrary to those provisions of the charter which prescribe the mode of appointing officers, is without force. It does not appear that any

such superintendent was in fact appointed, and if he was, he could not be regarded as an officer of the corporation, but a mere temporary servant of the street commissioner and committee, like an engineer or other workman. Nor is the objection that the ordinance actually passed varied from that introduced at the prior meeting of the council, sustained by the facts. There was a slight variance in the title, in nowise affecting the construction of the ordinance, as passed, which is identical with that before introduced. I am therefore of opinion that the ordinance itself is valid as against the present prosecutor, and must therefore stand confirmed.

Several reasons were insisted on for reversing the assessment against the prosecutor, the most material of which will now be considered. First, it was objected that no notice was given to the prosecutor of the time and place the commissioners would meet to ascertain the expense, and assess it on the property benefited. This was held a fatal defect in the case of *The State* v. *Jersey City*, 4 *Zab.* 662. But it appears, as has been before stated, that he presented several written remonstrances to the council against confirming the report of the commissioners, without any complaint that he had not been heard by them; and it appears that the report and assessment were, after such remonstrance, referred back to them for correction: so that it is evident he might have had a hearing before them, had he desired it, and, I think, must be considered as having waived this right. A supplement to the charter, approved in 1852, (*Pamph. L.* 522,) which was not brought to the notice of the court when the case in 4th Zabriskie was determined, requires the clerk to give notice, in a newspaper, of the time and place when the council will receive and consider objections to an assessment. If a person assessed, then objects that he has had no opportunity of being heard before the commissioners, I think they are bound to give him that opportunity. The council has no power to alter the assessment, but simply to confirm

it, when it is correct. But if such a person presents objections, and makes no complaint that he has not been heard, and does not ask to be heard, he may fairly be considered as waiving that right.

A second and, in my opinion, fatal objection to the assessment was that it does not purport to be such a report and assessment as the law requires. By the 52d section of the original charter, (*Pamph. L.* 1851, *p.* 415,) as altered by the supplement of 1854, (*Pamph. L.* 391,) the common council are required to appoint a board of four commissioners of assessments, who are to ascertain and assess the expenses of improvements, when completed, which commissioners shall examine into the whole matter, and determine and report in writing to the common council what real estate ought to be assessed for such improvement, and what proportion of such expenses shall be assessed to each separate parcel or lot of land, and shall accompany such report with a map containing each lot assessed, and the name of the owner or owners thereof; which report and map shall be filed in the office of the city clerk, and be by him recorded in the assessment book; whereupon the said clerk shall cause to be inserted in at least one of the newspapers published in said city, for at least ten days, a notice of the filing of said report, and that the common council will meet, at a time and place to be specified in said notice, to consider said assessment, and to receive and consider all objections thereto, which may be presented in writing; and if the common council shall confirm said assessment, it shall constitute a lien on the property assessed for the amount of such assessment. Now it is clear that the commissioners are bound to report in writing that they did ascertain the expense incurred, and examine into the whole matter, and determine what real estate ought to be assessed, and what proportion should be assessed on each owner. No such report was made. There is what purports to be an assessment on each owner of lots, and a map, to which the

commissioners have added "Approved, Jersey City, November 6th, 1856," and thereto signed their names. This is neither a formal nor a substantial compliance with the law.

It was attempted to cure this defect of the report itself by the depositions produced, which it was insisted sufficiently show that the commissioners did, in fact, do all that the law required of them. I am by no means satisfied that in fact they ever did examine the whole matter, and ascertain the actual expense incurred, and exercise their joint judgments to determine in what proportion the several owners were benefited by the improvement, as they were bound to do; but if they did, it was important that they should so report in writing, that these facts might thus appear on their report as filed and recorded. There is no principle better settled than that commissioners or other persons exercising a special power, who keep no record of their proceedings, but whose acts are authenticated only by the certificate signed in each particular case, must show on the face of their proceedings that they have pursued strictly the authority vested in them by the statute under which they act. *Van Winkle* v. *Railroad Co.*, 2 *Green* 166; *State* v. *Jersey City*, 1 *Dutcher* 310. For this defect, I am of opinion that the assessment against the prosecutor must be set aside, and new commissioners appointed to examine and report anew, as the charter prescribes.

CITED in *Quinn* v. *City of Paterson*, 3 *Dutch.* 42; *State* v. *City of Hudson*, 3 *Dutch.* 216; *State* v. *Jersey City*, 4 *Dutch.* 510; *State* v. *City of Perth Amboy*, 5 *Dutch.* 263; *State* v. *Common Council of Newark*, 1 *Vr.* 306; *State* v. *Warford*, 3 *Vr.* 209; *State* v. *Town of Bergen*, 4 *Vr.* 40; *State* v. *Jersey City*, 6 *Vr.* 385; *State* v. *Mayor, &c., of Newark*, 7 *Vr.* 172; *State* v. *Jersey City*, 7 *Vr.* 189; *State* v. *Inhabitants of Trenton*, 7 *Vr.* 501; *State* v. *Perth Amboy*, 9 *Vr.* 429.